[No. F047368. Fifth Dist. Apr. 5, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
TERESA LYNN RYAN, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I and III of the Discussion.

COUNSEL

Valerie G. Wass, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, Lloyd G. Carter and Brian Alvarez, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

ARDAIZ, P. J.—Appellant Teresa Lynn Ryan stands convicted, following a jury trial, of burglary (Pen. Code,[1] § 459; counts I–III); receiving stolen property (§ 496, subd. (a); count IV); forgery by signing another's name (§ 470, subd. (a); counts V–VI); forgery by making or passing a forged check (*id.*, subd. (d); counts VII–VIII); forgery by possessing a blank or unfinished

---

[1] All statutory references are to the Penal Code unless otherwise stated.

check (§ 475, subd. (b); count IX); unauthorized use of personal identifying information (§ 530.5, subd. (a); count XI); and fraudulent use of an access card (§ 484g, subd. (a); count XII), a misdemeanor. In addition, she admitted having served four prior prison terms (§ 667.5, subd. (b)). Sentenced to a total unstayed term of 12 years 4 months in prison and ordered to pay various fines and penalty assessments, she now appeals. For the reasons that follow, we will vacate the convictions on counts V and VI and remand the matter for modification of portions of the sentence.

## FACTS

On September 21, 2004, appellant and Moriah Valencia entered three antique stores in Jamestown and stole purses and other items belonging to store personnel.[2] Generally speaking, appellant distracted the victim by asking to see something in the store, while Valencia absconded with the loot. Appellant then used or attempted to use some of the stolen checks, debit cards, credit cards, and identifications. Goods purchased with these items, together with other purloined belongings, were found in a vehicle associated with the two women. In defense, appellant admitted entering stores and asking about items that interested her, but claimed she was uninvolved in, and unaware of, Valencia's theft-related activities.

## DISCUSSION

### I*

### USE OF PRIOR CONVICTIONS FOR IMPEACHMENT

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### II

### LESSER INCLUDED OFFENSES

In counts V and VI, appellant was convicted of forgery in violation of subdivision (a) of section 470. In counts VII and VIII, she was convicted of

---

[2] Valencia, who was jointly charged with appellant, entered into a plea agreement prior to trial. Her case is not before us on this appeal.

*See footnote, *ante*, page 360.

forgery in violation of subdivision (d) of that statute. Counts V and VII were based on her conduct of signing Cynthia Carter's name to a check and using it to make a purchase at Staples, while counts VI and VIII were based on her conduct of signing Carter's name to a check and attempting to use it to make a purchase at Gypsy Rose Antiques. Appellant now says she could not properly be convicted of counts V and VI because forgery in violation of section 470, subdivision (a) is a lesser included offense of forgery in violation of section 470, subdivision (d). We reach the result urged by appellant, but by way of different reasoning.

■ It has long been settled in this state that multiple convictions may not be based on necessarily included offenses. (*People v. Ortega* (1998) 19 Cal.4th 686, 692 [80 Cal.Rptr.2d 489, 968 P.2d 48].) " 'The test . . . of a necessarily included offense is simply that where an offense cannot be committed without necessarily committing another offense, the latter is a necessarily included offense.' [Citations.]" (*People v. Pearson* (1986) 42 Cal.3d 351, 355 [228 Cal.Rptr. 509, 721 P.2d 595].)

■ In our view, the various subdivisions of section 470 do not set out greater and lesser included offenses, but different ways of committing a single offense, i.e., forgery. As originally enacted, section 470 contained no subdivisions. Even from 1990 to 1998, when the statute was divided into subdivisions (a) and (b), the various acts that constituted forgery were amassed in an undifferentiated, confusing recitation.[5]

---

[5] The statute read: "(a) Every person who, with intent to defraud, signs the name of another person, or a fictitious person, knowing that he or she has no authority so to do, to, or falsely makes, alters, forges, or counterfeits, any charter, letters patent, deed, lease, indenture, writing obligatory, will, testament, codicil, bond, covenant, bank bill or note, post note, check, draft, bill of exchange, contract, promissory note, due bill for the payment of money or property, receipt for money or property, passage ticket, lottery ticket or share purporting to be issued under the California State Lottery Act of 1984, trading stamp, power of attorney, certificate of ownership or other document evidencing ownership of a vehicle or undocumented vessel, or any certificate of any share, right, or interest in the stock of any corporation or association, or any controller's warrant for the payment of money at the treasury, county order or warrant, or request for the payment of money, or the delivery of goods or chattels of any kind, or for the delivery of any instrument of writing, or acquaintance, release, or receipt for money or goods, or any acquaintance, release, or discharge of any debt, account, suit, action, demand, or other thing, real or personal, or any transfer or issuance of money, certificate of shares of stock, goods, chattels, or other property whatever, or any letter of attorney, or other power to receive money, or to receive or transfer certificates of shares of stock or annuities, or to let, lease, dispose of, alien, or convey any goods, chattels, lands, or tenements, or other estate, real or personal, or any acceptance or endorsement of any bill of exchange, promissory note, draft, order, or any assignment of any bonds, writing obligatory, promissory note, or other contract for money or other property; or counterfeits or forges the seal or handwriting of another; or utters, publishes, passes, or attempts to pass, as true and genuine, any of the above-named false, altered, forged, or counterfeited matters, as above specified and described, knowing the same to be false, altered, forged, or counterfeited, with intent to prejudice, damage, or defraud

Former section 470 was repealed in 1998, and a new section 470 was enacted wherein the various acts constituting forgery were set out, to a certain degree, in different subdivisions. (Stats. 1998, ch. 468, §§ 1–2, pp. 2704–2705.)[6] Thus, as enacted in 1998 and as it existed when appellant committed the offenses at issue here, section 470 provided:

"(a) Every person who, with the intent to defraud, knowing that he or she has no authority to do so, signs the name of another person or of a fictitious person to any of the items listed in subdivision (d) is guilty of forgery.

"(b) Every person who, with the intent to defraud, counterfeits or forges the seal or handwriting of another is guilty of forgery.

"(c) Every person who, with the intent to defraud, alters, corrupts, or falsifies any record of any will, codicil, conveyance, or other instrument, the record of which is by law evidence, or any record of any judgment of a court or the return of any officer to any process of any court, is guilty of forgery.

"(d) Every person who, with the intent to defraud, falsely makes, alters, forges, or counterfeits, utters, publishes, passes or attempts or offers to pass, as true and genuine, any of the following items, knowing the same to be false, altered, forged, or counterfeited, is guilty of forgery: any check, bond, bank bill, or note, cashier's check, traveler's check, money order, post note, draft, any controller's warrant for the payment of money at the treasury, county order or warrant, or request for the payment of money, receipt for money or goods, bill of exchange, promissory note, order, or any assignment of any bond, writing obligatory, or other contract for money or other property, contract, due bill for payment of money or property, receipt for money or property, passage ticket, lottery ticket or share purporting to be issued under the California State Lottery Act of 1984, trading stamp, power of attorney, certificate of ownership or other document evidencing ownership of a vehicle

---

any person; or who, with intent to defraud, alters, corrupts, or falsifies any record of any will, codicil, conveyance, or other instrument, the record of which is by law evidence, or any record of any judgment of a court or the return of any officer to any process of any court, is guilty of forgery. [¶] (b) Upon a trial for forging any bill or note purporting to be the bill or note of an incorporated company or bank, or for passing, or attempting to pass, or having in possession with intent to pass, any forged bill or note, it is not necessary to prove the incorporation of the bank or company by the charter or act of incorporation, but it may be proved by general reputation; and persons of skill are competent witnesses to prove that the bill or note is forged or counterfeited."

[6] Related statutes (§§ 475, 475a, 476, 484e, 484f, 484g, 484i) were also repealed and enacted in new form. (Stats. 1998, ch. 468, §§ 3–15, pp. 2705–2706.)

or undocumented vessel, or any certificate of any share, right, or interest in the stock of any corporation or association, or the delivery of goods or chattels of any kind, or for the delivery of any instrument of writing, or acquaintance, release or discharge of any debt, account, suit, action, demand, or any other thing, real or personal, or any transfer or assurance of money, certificate of shares of stock, goods, chattels, or other property whatever, or any letter of attorney, or other power to receive money, or to receive or transfer certificates of shares of stock or annuities, or to let, lease, dispose of, alien, or convey any goods, chattels, lands, or tenements, or other estate, real or personal; or any matter described in subdivision (b).

"(e) Upon a trial for forging any bill or note purporting to be the bill or note of an incorporated company or bank, or for passing, or attempting to pass, or having in possession with intent to pass, any forged bill or note, it is not necessary to prove the incorporation of the bank or company by the charter or act of incorporation, but it may be proved by general reputation; and persons of skill are competent witnesses to prove that the bill or note is forged or counterfeited."[7]

The overhaul of section 470 and related provisions was intended to " 'make [the] laws governing financial crimes more "user friendly" ' " and " 'to clarify and streamline existing law with regard to forgery and credit card fraud.' " It was not intended to "change the meaning or legal significance of the law," but " 'merely [to] organize[] the relevant code sections into a cohesive and succinct set of laws that can be readily referred to and understood.' " (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 2008 (1997–1998 Reg. Sess.) as introduced Feb. 18, 1998, p. 2.)

In construing former section 470, courts consistently held that there was but one crime of forgery, and that the various acts proscribed by the statute were simply different means of committing that offense. For instance, in *People v. Frank* (1865) 28 Cal. 507, 513, the California Supreme Court stated: "Where, in defining an offense, a statute enumerates a series of acts, either of which separately, or all together, may constitute the offense, all such acts may be charged in a single count, for the reason that notwithstanding each act may

---

[7] Section 470, subdivision (d) has since been amended to add, just before the semicolon: "or falsifies the acknowledgment of any notary public, or any notary public who issues an acknowledgment knowing it to be false."

by itself constitute the offense, all of them together do no more, and likewise constitute but one and the same offense. To illustrate our meaning, take the statute against forgery, . . . where we find several acts enumerated, all of which are declared to be forgery. Thus 'the falsely making,' 'altering,' 'forging,' 'counterfeiting,' 'uttering,' 'publishing,' 'passing,' 'attempting to pass' any of the instruments or things therein mentioned, with the intent specified, is declared to be forgery. Now, each of those acts singly, or all together, if committed with reference to the same instrument, constitute but one offense. Whoever is guilty of either one of these acts is guilty of forgery; but if he is guilty of all of them, in reference to the same instrument, he is not therefore guilty of as many forgeries as there are acts, but of one forgery only. Hence an indictment which charges all of the acts enumerated in the statute, with reference to the same instrument, charges but one offense, and the pleader may therefore at his option charge them all in the same count, or each in separate counts . . . ." (Accord, *People v. Leyshon* (1895) 108 Cal. 440, 442–443 [41 P. 480]; *People v. Harrold* (1890) 84 Cal. 567, 568–569 [24 P. 106]; *People v. Luizzi* (1960) 187 Cal.App.2d 639, 644 [9 Cal.Rptr. 842]; *People v. Keene* (1954) 128 Cal.App.2d 520, 526–527 [275 P.2d 804].) In *People v. McKenna* (1938) 11 Cal.2d 327, 332 [79 P.2d 1065], the high court stated: "The crime of forgery consists either in the false making or alteration of a document without authority or the uttering (making use) of such a document with the intent to defraud. [Citation.]" (Accord, *People v. Reisdorff* (1971) 17 Cal.App.3d 675, 678–679 [95 Cal.Rptr. 224]; *People v. Swope* (1969) 269 Cal.App.2d 140, 143 [74 Cal.Rptr. 586]; *People v. McKissack* (1968) 259 Cal.App.2d 283, 287 [66 Cal.Rptr. 199]; *People v. Williams* (1960) 186 Cal.App.2d 420, 425 [8 Cal.Rptr. 871].) In short, "[t]he false making and uttering of the same instrument . . . constitutes but one offense. [Citations.]" (*People v. Neder* (1971) 16 Cal.App.3d 846, 853, fn. 2 [94 Cal.Rptr. 364].)

Since the 1998 revision of section 470 did not change the law, either by intent or by language, we conclude that the doing of one or more of the proscribed acts, with respect to the same instrument, constitutes but one offense. Thus, subdivisions (a) and (d) of the statute do not describe separate offenses, but merely separate means of committing the same offense. This conclusion is supported by the fact that the mens rea is the same for each (intent to defraud), as is the punishment (see § 473).

We recognize that a number of the authorities cited above were concerned not with the number of convictions that could be had, per se, but with pleading requirements, and that they antedated the enactment of section 954, or at least of some of the pertinent provisions now contained in that statute.

(See Historical Note, 50A West's Ann. Pen. Code (1985 ed.) foll. § 954, pp. 64–65.) Nevertheless, a consideration of that statute does not alter our conclusion that appellant could be convicted of forgery only once each with respect to the Staples and Gypsy Rose Antiques incidents.

■ In pertinent part, section 954 provides: "An accusatory pleading may charge two or more different offenses connected together in their commission, *or different statements of the same offense* . . . under separate counts . . . . The prosecution is not required to elect between the different offenses or counts set forth in the accusatory pleading, but the defendant may be convicted of any number of the *offenses* charged . . . ." (Italics added.) This permits the charging of the same offense on alternative legal theories, so that a prosecutor in doubt need not decide at the outset what particular crime can be proved by evidence not yet presented. (4 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Pretrial Proceedings, § 209, p. 413.)

Under section 954, multiple convictions can be based on a single criminal act, unless one offense is necessarily included in the other. (*People v. Benavides* (2005) 35 Cal.4th 69, 97 [24 Cal.Rptr.3d 507, 105 P.3d 1099].) In *Benavides*, for example, the California Supreme Court rejected the contention that the defendant could not be convicted of lewd and lascivious conduct (§ 288, subd. (a)) in addition to rape (§ 261, former subd. (2)) and sodomy (§ 286, former subd. (c)), where the evidence supporting that conviction was the same as the evidence of rape and sodomy. The court reasoned that lewd conduct with a child is not a necessarily included offense of either rape or sodomy, and is a distinct crime. (*Benavides*, at p. 97.) In *People v. Lofink* (1988) 206 Cal.App.3d 161 [253 Cal.Rptr. 384], a child was physically abused on two occasions, resulting in facial injuries one time and bone fractures the other. As to each, the defendant was convicted of willful cruelty toward a child under circumstances likely to cause great bodily harm and death (§ 273a, former subd. (1)) and inflicting corporal punishment on a child resulting in traumatic conditions (§ 273d). On appeal, he contended he could not properly be convicted of violating two separate child abuse statutes for the same acts or course of conduct. The Court of Appeal rejected this argument, finding that multiple charges and multiple convictions both were permitted by section 954, since the charges constituted different statements of the same offense. (*Lofink*, at p. 166.)

In the foregoing cases (and other similar authorities), while the defendant may have committed a single act or course of conduct, he or she was charged

with, and convicted of, violations of *separate statutes*. While each statute may represent a different statement of the same offense, it sets out a separate crime, not just—as in the case of section 470—alternative ways in which the *same crime* can be committed. In the case before us, although appellant arguably committed separate acts—signing the checks and then uttering them—she did not, thereby, violate more than one statute, but simply committed acts contained in separate subdivisions of a single statute, all of which were simply different ways of violating that statute.[8]

We have found no case permitting multiple forgery convictions, with respect to a single instrument, under comparable circumstances. For instance, in *In re Horowitz* (1949) 33 Cal.2d 534 [203 P.2d 513], the defendant was charged with forgery and three other offenses after he wrote a will on a piece of paper that was blank except for his mother's signature, procured the signatures of two purported witnesses, and, following his mother's death, instituted proceedings for probate of the forged will. (*Id.* at p. 536.) On appeal, the California Supreme Court rejected his argument that he was being improperly punished four times for one act. The court noted that he was charged with, and found guilty of, violating four sections of the Penal Code (§§ 115 [causing to be filed a false will], 132 [offering in evidence a false will], 134 [preparing a false will with intent to allow it to be produced for a fraudulent purpose in a probate proceeding], 470 [forging a will]). It stated: "Petitioner relies upon cases which hold that one who, with reference to the same instrument, is guilty of more than one of the acts denounced by section 470 (e.g., making and uttering a false instrument), is guilty of but one forgery; 'notwithstanding each act may by itself constitute the offense, all of them together do no more, and likewise constitute but one and the same offense.' [Citations.] These cases, however, are clearly distinguishable, for in each of them the above holding, or its substance, was made in answer to the contention that the indictment or information charged more than one offense (i.e., more than one violation of section 470), a mode of pleading formerly not permitted

---

[8] Section 245 is an example of a statute that contains greater and lesser included offenses in different subdivisions. (See *People v. Bechler* (1998) 61 Cal.App.4th 373, 378 [71 Cal.Rptr.2d 532].) Unlike the situation in section 470, however, the subdivision defining the greater offense requires proof of elements that go substantially beyond what is required by the subdivision defining the lesser offense, and the punishment for the two offenses is markedly different. (Compare, e.g., § 245, subd. (a)(2) [person who commits assault with firearm is punishable by up to four years in prison] with § 245, subd. (d)(1) [person who commits assault with firearm on peace officer or firefighter, and who knows or reasonably should know victim is peace officer or firefighter engaged in performance of duties, when victim is so engaged, is punishable by up to eight years in prison].)

under section 954 of the Penal Code. In none of such cases did the indictment or the information purport to charge, in addition to the offense denounced by section 470 of the Penal Code, *another offense disparately defined and denounced by another code section.* [Citation.] When (after section 954 was amended to permit such pleading) an indictment charged, in separate counts, violations of section 134 and section 470 of the Penal Code, it was held that 'Clearly, two separate offenses are set forth, and it is plain that each offense required proof of facts additional to those involved in the other'; the court rejected defendant's contention that there was but one offense . . . ." (*Horowitz*, at p. 542, italics added.) Thus, although *Horowitz* permits multiple convictions for violations of distinct code sections based on conduct involving a single instrument, it does not stand for the proposition that multiple convictions of *forgery* are permissible.

Although involving a different offense, *People v. Craig* (1941) 17 Cal.2d 453 [110 P.2d 403], is also instructive. In that case, the defendant was convicted of two counts of rape based on a single act of intercourse, committed against the will of a 16-year-old girl. Count 1 charged forcible rape under former subdivision 3 of section 261, while count 2 (after alleging it was a different statement of the same offense) charged statutory rape upon a child under the age of consent, in violation of former subdivision 1 of the statute. (*Craig*, at p. 454.) In holding that multiple convictions were improper, the California Supreme Court stated: "Under [section 261], but one punishable offense of rape results from a single act of intercourse, although that act may be accomplished under more than one of the conditions or circumstances specified in the [statute's] subdivisions. These subdivisions merely define the circumstances under which an act of intercourse may be deemed an act of rape; they are not to be construed as creating several offenses of rape based upon that single act." (*Craig*, at p. 455.) The court cited with approval a case in which it was said, " 'We think the true construction of section 261 to be that thereby the legislature meant merely to put beyond doubt the rule that on an information for rape the things mentioned in the subdivisions could be proven, and would establish the crime. It is not intended to alter or establish a rule of pleading; or to create six different kinds of crime.' " (*Craig*, at pp. 455–456.)

The court noted the existence of certain rules or tests for determining whether one or more offenses result from a single act or transaction. It concluded: "Where, as here, the charge and proof disclose a *single* act of intercourse resulting from *force* employed upon a *minor*, but one punishable rape is consummated, for the proof, though dual in character, necessarily crystallizes into one 'included' or identical offense." (*People v. Craig, supra,*

17 Cal.2d at p. 457.) It explained: "[I]t has been held, by way of illustration, that where one shot is fired and two persons are killed, two punishable homicides result. [Citation.] Likewise, it has been held that where one act or transaction violates the provisions of two statutes, whether of the same or different jurisdictions, it is punishable under both. [Citations.] [¶] All of these illustrations are distinguishable from the situation here confronting the court. In the cited instances, the one act or transaction either injured or affected two or more victims or ran counter to two or more separate and distinct statutes defining different crimes with variable elements. In many instances the violation of these separate statutes was complete at different stages of the commission of the single act or transaction. . . . But none of the foregoing distinguishable characteristics is here present. There is only one victim. There has been a violation of but one statute . . . . And, while the proof necessarily varies with respect to the several subdivisions of that section under which the charge may be brought, the sole punishable offense under any and all of them is the unlawful intercourse with the victim." (*Id.* at pp. 457–458.)

■  Although *Craig* speaks in terms of "punishable offenses," we think it apparent that it proscribes more than one conviction under the circumstances before it, and we find its reasoning pertinent here. Under section 954, a defendant may be convicted of any number of the *offenses* charged. Since the commission of any one or more of the acts enumerated in section 470, in reference to the same instrument, constitutes but one offense of forgery (e.g., *People v. Frank, supra,* 28 Cal. at p. 513), it follows that, under section 954, appellant could be *charged* with multiple counts of forgery with respect to the Staples and Gypsy Rose Antiques incidents, but could be *convicted* of only one such count with respect to each. Accordingly, two of the four convictions she suffered in connection with those incidents must be vacated. Since her conduct in each incident appears to be more completely covered by subdivision (d) of section 470, we will vacate her convictions on counts V and VI, which involved subdivision (a) of the statute.

## III*

## SENTENCING ERRORS

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante,* page 360.

## DISPOSITION

The convictions on counts V and VI, together with the sentences imposed thereon, are vacated. The convictions on the remaining counts are affirmed. The sentence imposed on count XII is also vacated. The matter is remanded to the sentencing court with directions to (1) stay, pursuant to section 654, sentence on either count VIII or count XI; (2) articulate, both on the record and in the abstract of judgment, the statutory or other authority for the fines and penalty assessments imposed on the individual counts, or, if no such authority exists, to strike said fines and assessments; and (3) impose no more than a six-month concurrent jail term on count XII.

Vartabedian, J., and Levy, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 14, 2006, S143311. Baxter, J., did not participate therein.