Filed 9/8/16  P. v. Matta CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C078970 |
| Plaintiff and Respondent, | (Super. Ct. No. 13F04934) |
| v. | |
| ELIZA AZUCENA MATTA, | |
| Defendant and Appellant. | |

A jury convicted defendant Eliza Azucena Matta of assault with a deadly weapon, to wit, a knife (Pen. Code, § 245, subd. (a)(1)—count five) [1] and assault with force likely to produce great bodily injury (§ 245, subd. (a)(4)—count four).  On appeal, defendant contends that one of her convictions for violating section 245 must be reversed because it is duplicative.  We agree and will reverse defendant's conviction on count four and its

---

[1] Undesignated section references are to the Penal Code.

1

enhancement. We also order dismissal of the same and a corresponding amendment of the abstract of judgment.

## I. BACKGROUND

At about 4:20 p.m. on January 30, 2013, Angelita Pulido was driving her car on Interstate 5 in Sacramento. Her sister, Elizabeth Vasquez, and Vasquez's son were in the car with Pulido. Defendant, driving her van with her 15-year-old daughter and her daughter's friend as passengers, entered the highway and almost hit Pulido, who swerved to avoid a collision. Pulido became enraged as did Vasquez. Pulido followed defendant's van when she exited the highway. At a red light, Pulido got out of her car and yelled "my nephew's in the car, bitch." Defendant got out of her van and approached Pulido. Pulido grabbed defendant by the hair and the two began to fight. Defendant pulled out a knife and stabbed Pulido. Meanwhile, Vasquez and defendant's daughter had both gotten out of their respective vehicles and started to physically fight. After defendant stabbed Pulido, defendant yelled, "Get off my daughter, bitch," ran over to Vasquez, and stabbed her in the back and front. Vasquez suffered four stab wounds and a collapsed lung.

Count four charged defendant with assaulting Vasquez by means of force likely to produce great bodily injury. (§ 245, subd. (a)(4).) Count five charged defendant with assaulting Vasquez with a deadly weapon or instrument other than a firearm, to wit, a knife. (§ 245, subd. (a)(1).) In connection with count four, it was alleged that defendant personally used a deadly and dangerous weapon. (§ 12022, subd. (b)(1).) In connection with count five, it was alleged that defendant personally inflicted great bodily injury. (§ 12022.7, subd. (a).) The jury convicted defendant on counts four and five and found their respective enhancements to be true.[2]

_____

[2] The jury acquitted defendant on count one (attempted murder of Pulido) and was unable to reach a verdict on counts two and three (assault offenses on Pulido). The court

2

The trial court sentenced defendant to state prison for a total term of three years, that is, the midterm of three years for count five. The court imposed the great bodily injury enhancement to count five but struck the three-year punishment. The court imposed and stayed sentence on count four and its enhancement. (§ 654.)

## II. DISCUSSION

Defendant contends that section 245 as amended in 2012 does not set forth separate offenses but instead constitutes alternative ways of committing the same offense and that she may be convicted of only one violation of section 245 for her single act of stabbing Vasquez. The People agree this is the proper interpretation of the statute.

Prior to 2012, section 245, subdivision (a)(1) provided, in relevant part, as follows: "Any person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm or by any means of force likely to produce great bodily injury shall be punished by imprisonment."

The language had been interpreted to mean that section 245 defined only one offense. "The offense of assault by means of force likely to produce great bodily injury is not an offense separate from . . . the offense of assault with a deadly weapon." (*In re Mosley* (1970) 1 Cal.3d 913, 919, fn. 5; see *People v. Delgado* (2008) 43 Cal.4th 1059, 1070, fn. 4.)

Effective January 1, 2012, section 245, subdivision (a) was amended by splitting it into separate parts. (Stats. 2011, ch. 183, § 1.) In relevant part, section 245, subdivision (a)(1) provides as follows: "Any person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm shall be punished by imprisonment." Section 245, subdivision (a)(4) provides: "Any person who commits an

---

declared a mistrial on counts two and three. On the prosecutor's motion, the court dismissed these two counts.

3

assault upon the person of another by any means of force likely to produce great bodily injury shall be punished by imprisonment."

The issue is whether section 245 as amended was intended to create separate offenses or to continue providing alternative ways of violating section 245. The language of the statute does not resolve the issue.

"[T]he determination whether [different] subdivisions [of the same code section] define different offenses or merely describe different ways of committing the same offense properly turns on the Legislature's intent in enacting these provisions, and if the Legislature meant to define only one offense, [the courts] may not turn it into two." (*People v. Gonzalez* (2014) 60 Cal.4th 533, 537.)

Both parties have cited legislative history and conclude that it was not the Legislature's intent to create separate section 245 offenses for assaults of the nature committed by defendant but instead to split an ambiguous code section into distinct parts to allow for a correct and timely assessment of a defendant's criminal history, noting that an assault by means of force likely to produce great bodily injury, standing alone, is not a serious felony, while an assault with a deadly weapon, standing alone, is a serious felony (§ 1192.7, subd. (c)(31)), a prior serious felony for purposes of enhancement (§ 667, subd. (a)), and a strike prior (§ 667, subds. (b)-(i)). We agree.

"AB 1026 will make it easier for prosecutors and defense attorneys to determine whether or not a defendant's prior conviction for assault under [section 245, subdivision (a)(1)] involved an assault on a person with a deadly weapon or by any means of force likely to produce great bodily injury. Under California law, an assault with a deadly weapon can be treated more severely than an assault likely to produce great bodily injury." (Sen. Com. on Pub. Safety, Analysis of Assem. Bill No. 1026 (2011-2012 Reg. Sess.) as introduced Feb. 18, 2011, p. 4.) "AB 1026 does not create any new felonies or expand the punishment for any existing felonies. It merely splits an ambiguous code section into two distinct parts." (*Id.* at pp. 4-5.) We conclude that in enacting AB 1026,

4

the Legislature's intent was to more clearly describe the ways in which to violate section 245 rather than to define separate assault offenses under section 245.

Here, the People argued counts four and five and their respective enhancements were proven by defendant's single criminal act of stabbing Vasquez. We reverse defendant's conviction for assault by means of force likely to produce great bodily injury (count four) and its weapon-use enhancement. (See *People v. Ryan* (2006) 138 Cal.App.4th 360, 371 [the court of appeal should affirm the conviction that "more completely cover[s]" the defendant's conduct].) There is no change in the sentence since the trial court stayed sentence on count four pursuant to section 654. Having concluded count four must be reversed, we do not reach defendant's arguments that her dual convictions violate double jeopardy protections and due process or that counsel rendered ineffective assistance in failing to object to the duplicative convictions.

## III.  DISPOSITION

The judgment of conviction on count four and its weapon-use enhancement are reversed, and the court is directed to dismiss them and recalculate the fees and fines imposed.  In all other respects the judgment is affirmed.  The trial court is directed to prepare an amended abstract of judgment accordingly and to forward a certified copy of the amended abstract to the Department of Corrections and Rehabilitation.

/S/

_____

RENNER, J.

We concur:

/S/

_____

NICHOLSON, Acting P. J.

/S/

_____

ROBIE, J.